UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HERITAGE BANK OF COMMERCE,

    Plaintiff,

v.

ZURICH AMERICAN INSURANCE COMPANY,

    Defendant.

Case No. 21-cv-10086-RS

**ORDER GRANTING MOTION TO DISMISS**

## I. INTRODUCTION

Plaintiff Heritage Bank of Commerce purchased insurance from Defendant Zurich American Insurance Company. The policies were claims-made-and-reported policies, much as Heritage tries to convince otherwise. Under this type of policy, Heritage could only obtain coverage if a claim was made against it during the policy period *and* it reported the claim to Zurich during the period (or a short grace period afterwards).

Heritage was sued by several entities who had been scammed by DC Solar, one of Heritage's clients. Zurich denied coverage because the claims were not reported to Zurich according to Zurich's policies until well after the policy period had expired. Heritage argues it is entitled to coverage because it notified an employee in Zurich's underwriting department about the potential claim during the policy period. Unfortunately for Heritage, the law is clear that this is not enough. Additionally, Heritage acknowledges its losses result from DC Solar's bankruptcy, which is an independent reason Zurich can deny coverage. For the reasons further set out below, Zurich's motion to dismiss is granted, although Heritage has leave to amend.

## II. BACKGROUND

Beginning in August 2018, Heritage purchased multiple excess insurance policies from Zurich. ("Excess" because they applied only if Heritage's primary insurance from Federal Insurance Company was insufficient to cover a loss.) Each policy began in August and ran for one year. Heritage argues these policies cover various actions filed by victims of the DC Solar Ponzi scheme, who alleged that Heritage had aided and abetted the wrongdoing (e.g., by allowing those running the company to transfer funds from investors' accounts without authorization). They sued Heritage because DC Solar went bankrupt, so it could not fully compensate them for their losses. Heritage seeks the money it spent defending these matters, and indemnification for some of its $9 million settlement of a case brought by the bankruptcy trustee.

Heritage first reported the potential losses to its primary insurer the same month it received notice of them. It then reported them to Zurich—or so Heritage contends. As part of its renewal application in July 2019, Heritage informed the underwriting department at Zurich that there was a legal hold letter relating to DC Solar, but that they expected it to be a "nuisance incident." Heritage did not send any notice to Zurich's claims department during the applicable period. One of the lawsuits was filed later that year, in December 2019. Another lawsuit was filed in December 2020, and negotiations with the bankruptcy trustee began around this time too. It appears that the excess policies were only in effect until August 2020; in any case, Heritage claims only that it is entitled to coverage under the 2018-2019 policies.

Zurich argues that claims must be reported using a specific process laid out in its policies, relying on policy language that "coverage is limited to loss from claims against the policyholder during the policy period . . . and reported to the underwriter pursuant to subsection III.A." Compl. Ex. A. at 7. Specifically, claims must be made to "the underwriter," but this does not mean the underwriting department. Instead, notice must be given to the claims department, at a specified address. The policy required the claim to be made during its existence, or 60 days afterwards. Zurich argues it did not receive notice of the claims until February 2021, although what form this notice took is unclear from both the Complaint and the briefs. Heritage argues its notice to the

1  underwriting department in 2019 satisfies the notice requirement (among other arguments,

2  discussed below). Heritage also argues that the policy is a claims-made policy, with looser

3  reporting requirements (as discussed below), because Federal's policy was a claims-made policy

4  and Zurich's policy contains language saying that "This policy follows to the terms, conditions,

5  and limitations of the followed policy." Compl. Ex. A. at 7.

### III. LEGAL STANDARD

Rule 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### IV. DISCUSSION

#### A. Request for Judicial Notice and Incorporation by Reference

Zurich moves for certain documents to be judicially noticed or incorporated by reference. The requests are exclusively for court documents, communications between Heritage and Zurich, and policies issued by Zurich to Heritage. The court documents are judicially noticed, and the others are all incorporated by reference because they are referenced extensively in the Complaint. *Khoja v. Orexigan Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Heritage's vague claim

United States District Court
Northern District of California

that Zurich did not sufficiently authenticate the documents is not specific enough to raise a question as to their authenticity.

### B. Type of Policy

Zurich argues this is a claims-made-and-reported policy, and as this point is essential, it must be analyzed first. There are several types of insurance policies. "Occurrence" policies offer the broadest coverage in the sense that they may cover any liability that arises during a policy period, regardless of when a claim is made or reported. *See, e.g.*, *Centurion Med. Liab. Protective Risk Retention Grp. Inc. v. Gonzalez*, 296 F. Supp. 3d 1212, 1217 (C.D. Cal. 2017). "Claim" in this context refers to a third-party demanding money, not the "claim" the purchaser of insurance submits to the insurer. For example, if someone slips and falls in an insured business, the victim makes a claim to the business, e.g., files a lawsuit, and the business then reports it to its insurer. If the business was insured with an occurrence policy when the victim slipped, it may recover from the insurer no matter when the victim makes a claim, or when the company reports the claim to the insurer. "Claims-made" policies, by contrast, cover only claims made during the policy period. (They typically include a "retroactive date" limiting the occurrences which they will cover as well.) The most stringent type of insurance in this regard are "claims-made-and-reported" policies, in which both the claim and the report of it to the insurance company must be made during the same policy period in which the claim was made. *Id.* Many of these policies include a grace period to report a claim, sometimes required by state law.

Claims-made-and-reported policies offer value to both insurers and insurance purchasers, because they allow for a more certain determination of the risks involved. With occurrence or claims-made policies, insurers must allow for some uncertain amount of risk haunting the customer's past. With claims-made-and-reported policies, by contrast, any skeletons in the closet are irrelevant. Insurers can offer lower premiums on these policies because they do not have to account for any reservoir of risk. This system only works if the window slams shut at the end of each period. Thus, an insurer does not need to show prejudice for these types of policies. *Aletheia Rsrch. & Mgmt., Inc. v. Houston Cas. Co.*, 831 F. Supp. 2d 1210, 1220 (C.D. Cal. 2011).

Zurich argues this is a claims-made-and-reported policy because the policy documents say it is. Heritage argues the Zurich policy follows the Federal policy, which is a "claims-made" policy. While the exact contours of how the Zurich policy follows the Federal policy may be somewhat unclear, the notice provisions are not. Clearly, the fact that the Zurich policy follows the Federal policy does not convert every aspect of the Zurich policy to match the Federal policy. Heritage provides no support for its argument that purchasing excess insurance as a following policy means that basic facts of the policy as written are inaccurate; nor that it provides an excuse for not complying with the clear, written notice provision. For example, it would be nonsensical to argue that Heritage could have put Zurich on notice by sending notice to Federal. Yet Heritage's argument implies that would be acceptable. Zurich's policy was a claims-made-and-reported policy.

**C. Compliance with Notice**

Heritage did not comply with the notice period required by Zurich's policy. The only support Heritage makes for notice is the email to an underwriter during the renewal process. That does not suffice. This is because insurers' underwriting departments should not have to decide what parts of renewal applications to forward on to claims departments. *Atl. Health Sys., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 463 Fed. App'x 162, 168 (3d Cir. 2012). Zurich notes Heritage has not cited any case finding that notice to an underwriting employee is sufficient in this situation. Further, courts have found there is no duty to investigate unless notice is sent as required. *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, Case No. 8:17-cv-01661-JVS-DFM (C.D. Cal. Mar 19, 2018), Dkt. No. 36, pp. 7–8. Ultimately, there are insufficient facts alleged to support the Complaint. *UMG Recordings, Inc.*, 718 F.3d at 1014.

Heritage also attempts to paint its communication as notice of a potential claim. California law does not allow notice of a potential claim to substitute for notice of an actual claim for these types of policies. *Helfand v. Nat'l Union Fire Ins. Co.*, 10 Cal. App. 4th 869, 878–89 (Ct. App. 1992). Heritage's arguments that notice is effectively not required, or that Zurich was on constructive notice, need not be addressed.

1    Heritage contends that Zurich's arguments cannot be considered at the motion to dismiss stage, relying on *United Ass'n Loc. 38 Pension Tr. Fund v. Aetna Cas. & Sur. Co.*, 790 F.2d 1428, 1430 (9th Cir. 1986). *United* held that "where the controversy centers on . . . whether the terms of the contract were met the case must be submitted to the trier of fact." *Id.* Yet *United* also held that a question need not go to a factfinder where it turns on interpretation of the contract. *Id.* Heritage's error in logic is to assume that even if interpreting the contract makes clear that a party did not comply with a term, the case must still trudge on until a factfinder affirms that inevitable conclusion. That would essentially obviate the distinction drawn by *United*. The meaning of the contract is the key issue here. There is no controversy as to how Heritage attempted to comply with the notice provisions, there is only a controversy about what the terms of the various policies mean. Even taking the facts stated in the Complaint as true, and viewing them in the light most favorable to Plaintiff, Heritage did not comply with the notice provisions.

**D. Forfeiture**

Heritage next claims that denying coverage on this rather technical basis would be a forfeiture. Yet there are cases in which sending notice to an incorrect address was sufficient to deny coverage. *E.g*, *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 787 Fed. App'x 469, 470 (9th Cir. 2019). Cases in which courts have overlooked noncompliance with notice provisions on forfeiture grounds are easily distinguishable from the instant case. Generally, there must have been only *de minimis* noncompliance—a few hours of lateness, not two years, as here. *E.g.*, *Oakland-Alameda Cnty. Coliseum, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 480 F. Supp. 2d 1182 (N.D. Cal. 2007). Further, as discussed above, there are policy reasons for holding parties to the terms of claims-made-and-reported policies. If Heritage had wished, it could have purchased an occurrence or claims-made policy, at a higher rate, and enjoyed the more lenient reporting policies that might have averted this case. Instead, it purchased a claims-made-and-reported policy, and enjoyed the lower premiums accompanying such policies. It cannot now turn around and argue that to hold it to the terms of such policies would constitute a forfeiture.

### E. Insolvency

Additionally, Zurich rightly notes that the claims here stem from DC Solar's bankruptcy. The Federal policy excludes coverage for any loss "arising from, or in consequence of … the insolvency of any … person or entity," or "the inability of any such entity or person to make any payment." MTD, RJN Ex. G, pp. 8, 10. Heritage does not dispute that it cannot receive coverage from Zurich on the excess policy if it could not receive coverage from Federal on the followed policy. Heritage's own Complaint acknowledges that it was DC Solar's bankruptcy which prompted the bankruptcy trustee and others to assert claims against Heritage. Compl. at ¶¶ 10, 38, 49. So, even if Heritage had complied with the notice provisions, Zurich could not be forced to pay out these claims.

### F. Sixth-Layer Policy

The dispute about whether separately ruling on the sixth-layer policy would be inappropriate need not be reached because both sides agree that the policy terms are the same as the first excess policy, so Heritage cannot obtain coverage for the reasons discussed above; there is no need to reach any of the further issues concerning this layer of coverage.

### V. CONCLUSION

For the reasons stated above, Zurich's motion to dismiss is granted. While it is unclear how Heritage could salvage its claims, they are not so clearly futile as to justify denying leave to amend, given the strong presumption in favor of granting leave to amend upon dismissing a complaint for the first time. *National Council of La Raza v. Chegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). Accordingly, leave to amend within 30 days is granted.

**IT IS SO ORDERED**.

Dated: August 17, 2022

RICHARD SEEBORG
Chief United States District Judge