UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HERITAGE BANK OF COMMERCE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ZURICH AMERICAN INSURANCE COMPANY,<br><br>　　　　Defendant. | Case No. 21-cv-10086-RS<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## I. INTRODUCTION

On August 17, 2022, Plaintiff Heritage Bank of Commerce's ("Heritage") initial complaint was dismissed. Though Heritage was given leave to amend, we observed that "it is unclear how Heritage could salvage its claims." Indeed, Heritage's Amended Complaint fails to overcome the flaws identified—and for the reasons stated below, Defendant Zurich American Insurance Company's ("Zurich") motion to dismiss is granted.

## II. BACKGROUND

As laid out in greater detail in the prior dismissal order, Heritage purchased excess insurance policies from Zurich that served as its first and sixth layer excess policies. These policies followed a primary insurance policy from Federal Insurance Company ("Federal"). The operative Zurich policies ran from August 2018-2019. In the process of renewing those policies for the August 2019-2020 year, Heritage engaged in email correspondence with a Zurich underwriter in July 2019. Attached to one of the emails in that correspondence chain were a few documents, including Heritage's notice to Federal (addressed to Federal's Claims Department) and

the Legal Hold letter it received.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570, (2007)). A Rule 12(b)(6) motion tests the legal sufficiency of the claims alleged in the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Thus, dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013). When evaluating such a motion, courts generally "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Indeed, courts are "not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1093 (N.D. Cal. 2009).

## IV. DISCUSSION

### A. Substantial Compliance and Notice of Circumstances

In an effort to overcome the prior order's finding that Heritage's failure to submit a notice of claim during the 2018-2019 policy period warranted dismissal, Heritage's Amended Complaint pleads additional details regarding a "notice of circumstance"—the email with the Zurich underwriter—that it argues provided sufficient notice during the policy period.

Yet the additional proffered details regarding the "notice of circumstance" do not disturb the conclusion that Heritage did not comply with the notice requirements in Zurich's policy.

Indeed, Heritage itself admits that "its notice of circumstance [does not] serve[] as a substitute for notice of an actual claim,"[1] and that "Heritage gave notice of an actual claim in 2021 when the DC Solar Claims were actually made." Dkt. 34 at 11 (internal quotation marks and citations omitted). For the reasons articulated in the prior order, compliance with notice for claims-made-and-reported policies is of paramount importance. Dkt. 30 at 4-5.

Nor does Heritage's argument that the notice of circumstance ought to satisfy Section 8(b) of Federal's Followed Policy, a reframing of its "attempt[] to paint its communication as notice of a potential claim," fare any better. The central problem underlying Heritage's notice failure is that, without sending notice to the proper place, Zurich never actually knew about the claim—or, here, the circumstances that could give rise to a potential claim. Heritage's argument therefore suffers from the exact same deficiency.

Heritage's insistence on the doctrine of substantial compliance does not save its claims. It is indeed true that California applies the doctrine of substantial performance to conditions precedent. *FNBN Rescon I, LLC v. Citrus El Dorado, LLC*, 725 F. App'x 448, 452 (9th Cir. 2018). Yet contrary to its arguments, Dkt. 34 at 13-14, cases interpreting and applying the substantial compliance doctrine do not support Heritage's position.

*UnitedHealth Group*, for instance, maintains that "a substantial-compliance standard should apply to the 'to whom' requirement in the [insurance] policy." *UnitedHealth Group Inc. v. Columbia Cas. Co.*, 941 F. Supp. 2d 1029, 1043 (D. Minn. 2013). Yet it goes on to explain that "substantial compliance requires compliance that is *substantial*," and explicitly rejected the argument that a party "substantially complies with the 'to whom' requirement . . . when it provides any kind of notice to any kind of agent of [the insurance company] during the policy period"; rather, the Claims Department must have received notice of a claim during the policy period. *Id.* at 1044. Indeed, holding otherwise would run the "substantial danger" that the required "notice"

---

[1] If anything, Heritage's correspondence with Federal illustrates that Heritage clearly understood how to give notice of an actual claim. *See* Complaint, Ex. F.

would not serve its function: insurance companies would then "depend on its underwriting department to sift through a renewal application and decide what should be forwarded to the claim's department on the insured's behalf," thereby "defeat[ing] the very purpose of the [notice] provision." *Id.* (citing *Am. Cas. Co. of Reading, Pa. v. Continisio,* 17 F.3d 62, 69 (3d Cir.1994)) (internal quotation marks omitted). It is for this reason that many courts "have held that requiring an insured to send notices to a claims department fulfills an essential feature of the provision of notice." *Landmark Am. Ins. Co. v. Lonergan L. Firm, P.L.L.C.*, 809 F. App'x 239, 242 (5th Cir. 2020) (citing cases); *see also UnitedHealth Group*, 941 F. Supp. 2d at 1044 ("[T]o whom requirements—at least insofar as they specify the exact person or department that must receive notice—set out bright, discriminating lines that do not lend themselves to the application of a relaxed interpretive standard.") (citing *Owatonna Clinic-Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind.*, 639 F.3d 806, 812 (8th Cir. 2011)) (internal quotation marks omitted). Accordingly, we disagree that Heritage's noncompliance is *de minimis*. Dkt. 34 at 19.

Nor does *Root v. Am. Equity Specialty Ins. Co.*, 130 Cal. App. 4th 926 (2005) further Heritage's arguments. *See* Dkt. 34 at 14-15. *Root* explained that "equitable excuse of a condition precedent" is possible under California law "if equity requires it," but the inquiry will "vary with the peculiar facts of each case," and "[s]ometimes—indeed most of the time—it will not be equitable to excuse the non-occurrence of the condition." *Id.* at 947-48. *Root* itself concerned a situation where the insured first was alerted to a potential claim under very ambiguous circumstances, and reported the claim as soon as he had information that he had in fact been sued (a mere *two* days past the policy period). *Id.* at 930-31, 934. *Root* "makes clear that [equitable] relief is reserved for unusual cases," and courts have refused to supply that relief where the insured "waited 213 days to report the claim." *World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1098 (N.D. Cal. 2009). Where, as here, the insured "has not and cannot allege that it complied with the express notice requirements set forth in [the] Policy," and there are no analogous circumstances, "equitable relief is not warranted." *EurAuPair Int'l, Inc. v. Ironshore Specialty Ins. Co.*, 2018 WL 4859948, at *3 (C.D. Cal. June 19, 2018).

1    To sidestep the notice requirement, Heritage claims in a declaration that "it would be the insurance industry custom and practice for the underwriter in charge of the Insured's renewal to send the document called 'Notice of Circumstances' to his Claims department." Dkt. 34-1 at 4. Although Plaintiff asserts that "courts regularly accept as true allegations of industry custom and practice at the pleading stage," it offers no California authorities in support of this principle. Indeed, this is not a factual allegation[2], but an unreasonable inference based on extrinsic evidence. Indeed, adopting such an inference would seriously undermine insurers' ability to ever set its own procedures. *See UnitedHealth Group*, 941 F. Supp. 2d at 1045 (explaining that if "notice to an underwriter would suffice, even if the policy demanded notice to a claims representative" then "an insurer could almost never require that its insureds send notice to a particular person or department, because its insureds will commonly submit renewal applications during the policy period, and those renewal applications will commonly include information that, in hindsight, could be considered notice of a claim.")

Heritage also renews its argument that the case cannot be decided on a motion to dismiss, and cites cases indicating that substantial performance is a question of fact ill-suited for resolution via a motion to dismiss. However, these cases are inapposite, as they concern distinguishable circumstances that do not account for the essential features of claims-made-and-reported insurance policies. *See, e.g., Magic Carpet Ride LLC v. Rugger Investment Group, L.L.C.,* 41 Cal. App. 5th 357 (concerning the sale of an airplane). Furthermore, nothing in the Amended Complaint or Plaintiff's opposition papers suggest any basis for granting equitable relief. *See World Health*, 612 F. Supp. 2d at 1098.

**B. Insolvency Exception**

Zurich asserts that Heritage is not entitled to coverage for its claims in the first place, due to the insolvency exception contained in Section 3l of the Followed Policy, which explains that "The Company shall not be liable for Loss on account of any Claim: based upon, arising from, or

---

[2] Nor does Heritage's inclusion of an improper declaration make it so.

in consequence of: the insolvency of any bank, banking firm, broker, or dealer in securities, or any other person or entity, or the inability of any such entity or person to make any payment or settle or effect any transaction of any kind; provided that this Exclusion 3l(1) shall not apply to **Wrongful Acts** solely in connection with an **Insured's** investment on behalf of the claimant in the stock of any of the foregoing entities." Complaint, Ex. A. at 8.

To prevail on its argument that coverage is excluded, "the insured must prove the existence of a *potential for coverage*, while the insurer must establish *the absence of any such potential*." *Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1069 (C.D. Cal. 2009). The prior order found this insolvency exception as an alternate basis to dismiss Plaintiff's claims—but Heritage explains that it included "a prior unartful characterization" that was corrected in the FAC, Dkt. 34 at 23 n.10. and also notes that of the three lawsuits in question—the Solarmore, SEIFs, and Lovato actions—two are civil actions, not bankruptcy proceedings.

California cases make it clear that the term "arising from" is given a broad interpretation when used in an exclusion. Indeed, "it is settled that this 'arising out of' language does not import any particular standard of causation or theory of liability into an insurance policy," but rather, "broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1070 (C.D. Cal. 2009) (citing *Acceptance Ins. Co. v. Syufy Enters.,* 69 Cal. App. 4th 321, 328 (Cal. Ct. App. 1999)).

Further, it is true that under the doctrine of concurrent causation, "when a harm is caused jointly by an insured risk and by an excluded risk . . . the insurer is liable so long as one of the causes is covered by the policy." *Bickerstaff*, 650 F. Supp. 2d at 1071. However, *Bickerstaff* distinguished a case applying the concurrent causation doctrine to dual causes of insolvency and malpractice, explaining that it did not apply where the "alleged malpractice caused the damages incurred from [the] insolvency." *Id.* at 1072. Otherwise, a contrary interpretation "would render the exclusionary clauses meaningless, because malpractice, which is the subject of the insurance

**ORDER GRANTING MOTION TO DISMISS**
CASE NO. 21-cv-10086-RS
6

policy, would always be a concurrent cause in addition to the causes excluded in the exclusionary clauses, such that coverage would never be excluded." *Id.* at 1073.

The Solarmore and SEIF actions concern allegations that Heritage breached its duties—but the claims of aiding and abetting asserted against Heritage, asserted alongside claims for equitable contribution/indemnification, are broadly linked with the insolvency necessitating Heritage's naming as a defendant. Cases have rejected explicitly requiring that the insolvency be caused by the actions of the insured, *see id.* at 1071, and Heritage provides no reason to depart from that practice here.

## V. CONCLUSION

For the reasons stated above, the motion to dismiss is granted without further leave to amend.

**IT IS SO ORDERED**.

Dated: January 3, 2023

_____
RICHARD SEEBORG
Chief United States District Judge